IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLIFTON PRENTICE,

    Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

    Defendant.

Civil No. 04-347-HA

OPINION AND ORDER

MARTIN R. COHEN
P.O. Box 1229
4040 Douglas Way
Lake Oswego, Oregon 97035

JEFFREY L. OLSEN
4500 S.W. Kruse Way, Suite 100
Lake Oswego, Oregon 97035
        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JOANNE E. DANTONIO
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, Washington 98104-7075
        Attorneys for Defendant

HAGGERTY, Chief Judge:

    Plaintiff Clifton Prentice brings this action for judicial review of a final decision from defendant Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

PROCEDURAL BACKGROUND

    Plaintiff applied for DIB and SSI on March 20, 2001, describing disability with an alleged onset date of September 1, 1997, arising from depression, difficulties with memory and concentration, and anxiety. This application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) conducted a hearing on December 18, 2002. Testimony was given by plaintiff, who was represented by counsel, plaintiff's mother Louise Prentice, and a Vocational Expert (VE) Kay Hartgrave.

    On February 23, 2003, the ALJ issued a decision finding that plaintiff retained the residual functional capacity (RFC) to perform a wide range of work without exertional limitations. The VE testified that there were hundreds of thousands of jobs plaintiff could

perform, and the ALJ concluded that plaintiff was not disabled within the meaning of the applicable standards. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review of this decision.

LEGAL STANDARDS

A person may be eligible for DIB if he or she has insured status under the Act and suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). Persons who are age 65 or over, blind, or disabled, may be eligible for SSI regardless of their insured status under the Act. 42 U.S.C. § 1382(a).

A claimant is considered disabled for purposes of receiving DIB or SSI benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A person can be disabled for these purposes only if his or her impairment is of such severity that the person is not only unable to perform previous work but cannot, considering the person's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for DIB or SSI payments. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).

First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is so engaged, disability benefits are denied. If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §§ 404.1520(a), 416.920(a). If the claimant does not, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to any of a number of impairments that the Commissioner acknowledges to be so severe that they are presumed to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work which he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The claimant is entitled to disability benefits if he or she is not able to perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the initial burden of establishing his or her disability. In the five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. In step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC and age, education and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (DIB); *Andrews v. Shalala,* 53 F.3d 1035, 1040 (9th Cir. 1995) (SSI). If the Commissioner cannot meet this burden, the claimant is considered disabled for the purposes of awarding benefits under the Act. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

The Commissioner has an affirmative duty to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). In this sense, the proceedings are not adversarial and the Commissioner shares the burden of proof at all stages. *Id.*; *Tackett,* 180 F.3d at 1098 n. 3.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1098. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Id*. Moreover, substantial evidence is more than a mere scintilla, but not necessarily a preponderance, of evidence. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

FACTS

The relevant background has been presented thoroughly by the parties. Plaintiff was forty-one years old at the time of the hearing decision. He is a high school graduate and has worked as an automobile body repair mechanic and a vacuum cleaner salesperson. He last worked in September 1997. Detailed evidence regarding plaintiff's medical history will be addressed as relevant in the analysis below. The ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, and that plaintiff suffered the severe impairments of depression and substance addiction disorder. The ALJ also concluded that plaintiff maintained the residual functional capacity (RFC) to perform work without physical restrictions and limited to one- to three-step tasks, with limited interaction with the public, no exposure to hazards, and no immediate production goals.

QUESTION PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for payment of benefits because: the ALJ (1) improperly rejected and evaluated plaintiff's testimony; (2) posed an incomplete hypothetical question to the VE that failed to encompass all of plaintiff's impairments; and (3) erroneously adopted the VE's flawed and inconsistent conclusions.

DISCUSSION

    1.    <u>Plaintiff's Testimony</u>

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988) (*Varney I*).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence to meet the *Cotton* test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged . . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton*, 799 F.2d at 1407-08.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom. The claimant need not produce objective medical evidence of the *symptoms*, or the severity thereof. *Smolen*, 80 F.3d at 1281-82 (emphasis added); *see also Bunnell*, 947 F.2d at 347-48.

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

*Smolen*, 80 F.3d at 1282 (citations and quotations omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

> In determining that subjective testimony is not credible, the ALJ may rely on:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons, supported by substantial evidence, for doing so. *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

In this case, plaintiff produced some objective medical evidence of underlying impairments and the record contains no evidence of malingering. Accordingly, the ALJ was required to make specific findings stating clear and convincing reasons for rejecting plaintiff's symptom testimony. This court concludes that the ALJ did so.

The ALJ noted properly that plaintiff's credibility was diminished by his starkly inconsistent testimony regarding his use of illegal drugs. Tr. 22. Although plaintiff excuses these inconsistencies as a result of plaintiff's poor memory and "confused and foggy" thinking, Pls. Memo. at 26, such characteristics nevertheless directly implicate a speaker's credibility. The ALJ correctly made specific findings about plaintiff's testimony with clear and convincing reasons that supported the ALJ's evaluation of its credibility. The ALJ also properly compared and evaluated plaintiff's testimony against relevant medical evidence in the record. *See Rollins*, 261 F.3d at 857 (medical evidence is still a relevant factor in determining the severity of the claimant's impairment and its disabling effects). Plaintiff's testimony of continuing, debilitating depression was inconsistent with the medical evidence that plaintiff's symptoms improved markedly when plaintiff abstained from drugs and alcohol. The ALJ's recitation of this

correlation provided additional clear and convincing reasons for his credibility determination. Tr. 22.

The ALJ also referred to plaintiff's activities, such as socializing with friends, preparing for computer classes and part-time employment, going fishing, and working for his father, as being not wholly consistent with his impairment testimony. Tr. 22. Referring to a claimant's specific social activities and showing that these activities "undermine" that claimant's testimony about the severity of impairments is proper. *Rollins*, 261 F.3d at 857.

Plaintiff also challenges the ALJ's interpretation of the evidence of his social activities as revealing "an active lifestyle." Tr. 22. Plaintiff's specific objection is that "the Commissioner erred in incorrectly evaluating the testimony of Mr. Prentice to conclude that as a result of his daily activities he is able to perform work-related activities." Pls. Memo. at 31. However, the reasoning presented in the ALJ's findings described the evidence of plaintiff's activities as being inconsistent with plaintiff's reports to his treating sources and his testimony about how he spent his time. Tr. 22. Plaintiff's objections pertaining to a claim that the ALJ found plaintiff capable of work as a result of the evidence regarding his social activities are unfounded.

    2.    <u>Hypothetical Question</u>

Next, plaintiff alleges that the ALJ erred in constructing the hypothetical question he posed to the VE. A hypothetical question must adequately describe a claimant's impairments so that the VE may accurately assess whether jobs exist for the plaintiff. *See Lewis v. Apfel,* 236 F.3d 503, 518 (9th Cir. 2001). An expert's testimony that is based upon an insufficient hypothetical question does not constitute substantial evidence to support a finding of an absence of disability. *Varney v. Sec'y of Health and Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1988).

The hypothetical question posed to a VE must explain the practical ramifications that flow from the claimant's impairments. *Tackett*, 180 F.3d at 1101 (citations omitted). "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental[,] supported by the record." *Thomas*, 278 F.3d at 956 (citation and internal quotation marks omitted).

In this case, the ALJ's hypothetical question to the VE described plaintiff's restrictions as being limited to one- to three-step tasks, limited interaction with the public, no exposure to hazards, and no immediate production goals. Tr. 23, 55. These limitations are supported by the medical evidence and the State Agency reviewing physicians' opinions. *See* Tr. 167; 173-78; 181-82; 186-92; 194-203; 208; 215; 222-37; 252-61; 264-89; 290; 298; 304-15.

Plaintiff argues that the ALJ erred by omitting additional proposed restrictions such as limited contact with supervisors, limited ability to accept or respond to criticism, poor concentration, and the likelihood of one to two workdays' absence every month. Pls. Memo. at 32.

The hypothetical question adequately described plaintiff's impairments, was fully supported by the medical evidence presented, and the scope of the limitations presented was consistent with the limitations the ALJ ultimately attributed to plaintiff in his findings. The ALJ's condensation of the medical evidence was sufficiently accurate to allow the VE to assess plaintiff's capacity to do work. To the extent that there are inconsistencies between the various doctors' opinions, or the scope of plaintiff's alleged limitations, the ALJ resolved them appropriately.

Plaintiff also levels a specific challenge to the ALJ's decision to attribute less weight to the opinion of evaluating psychologist Julia Wong-Ngan. The ALJ acknowledged that Dr. Wong-Ngan "opined in February 2001 that the claimant was not able to sustain normal gainful employment." Tr. 22. The ALJ then explained that this opinion was accorded less weight because the doctor's opinion pertained to "vocational issues of which [the doctor] has no expertise" and because plaintiff's self-reported medical history to Dr. Wong-Ngan was inconsistent with evidence of recent intoxicant-abuse by plaintiff prior to Dr. Wong-Ngan's examination. Tr. 23.

It is the ALJ's responsibility to determine credibility and resolve conflicts and ambiguities in the medical and non-medical evidence; when the evidence is susceptible to more than one rational interpretation, and one is provided, the ALJ's conclusion must be upheld. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes v. Bowen*, 881 F.2d 747, 753-54 (9th Cir. 1989). The accuracy of the doctor's subsequent evaluation of plaintiff was cast into doubt after the ALJ ascertained that plaintiff provided false information to the doctor during plaintiff's examination. Regardless of whether plaintiff's misleading information was provided intentionally or as a result of "faulty memory," as plaintiff now claims, the ALJ's assessment of the weight attributable to Dr. Wong-Ngan's opinion was proper.

\\\
\\\

### 3. Adoption of VE's Conclusions

Plaintiff's final argument is that the jobs the VE identified as being suitable for plaintiff were all listed in the Dictionary of Occupational Titles (DOT) rated as "level two" for "specific vocational preparedness (SVP). The ALJ determined that plaintiff's RFC was limited to "simple, 1- to 3-step tasks." Tr. 25. Plaintiff argues that "level two" jobs are not simple.

Under the relevant sections of the DOT, "level two" reasoning requires the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and also dealing with problems "involving a few concrete variables in or from standardized situations." DOT, Appendix C. Jobs requiring "level two" reasoning are appropriate for claimants who are limited to work involving "simple, routine, repetitive, concrete, tangible tasks." *Flaherty v. Halter*, 182 F. Supp.2d 824, 850 (D. Minn. 2001) (although the DOT definition states that level two jobs require the ability to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved and not require a high level of reasoning).

This court concludes that VE's testimony did not contradict the limitations presented by the ALJ, and that the DOT definitions, properly considered, fail to invalidate such testimony. Plaintiff's objections in this regard are therefore overruled.

\\\
\\\
\\\
\\\
\\\

CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner that plaintiff Clifton Prentice is not disabled is AFFIRMED.

IT IS SO ORDERED.

DATED this __5__ day of May, 2005.


          /s/Ancer L.Haggerty

          ANCER L. HAGGERTY
          United States District Judge